**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | |
|---|---|
| FELICIA DAVIS-BARRY, as Personal Representative of the Estate of DEXTER ERIC BARRY,<br><br>       Plaintiff,<br><br>v.<br><br>Sheriff T.K. WATERS, in his official capacity as the Sheriff of Duval County, Florida.<br><br>       Defendant. | Case No. 3:24-cv-102-WWB-PDB |

## AMENDED COMPLAINT AND DEMAND FOR A JURY TRIAL[1]

**COMES NOW** the Plaintiff, FELICIA DAVIS-BARRY ("Ms. Davis-Barry"), in her capacity as Personal Representative of the Estate of DEXTER ERIC BARRY (the "Decedent"), by and through the undersigned Counsel, and hereby sues Sheriff T.K. WATERS, in his official capacity as the Sheriff of Duval County, Florida, and alleges the following:

1.  This lawsuit is brought pursuant to the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983 and 1988.

2.  This Court has subject matter jurisdiction, pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343(a)(3) (civil rights).

3.  Venue is proper in this judicial district and division, pursuant to 28 U.S.C. § 1391(b) and M.D. Fla. Loc. R. 1.04.

---

[1] Defendant has provided Plaintiff written consent to file this amended complaint.

4. All conditions precedent to this action have accrued or have been satisfied.

5. Plaintiff FELICIA DAVIS-BARRY is the personal representative of the probate estate of DEXTER ERIC BARRY, decedent. She is the surviving wife of the Decedent.

6. On May 12, 2023, the Circuit Court of the Fourth Judicial Circuit, in and for Duval County, Florida, appointed FELICIA DAVIS-BARRY to be the personal representative of the probate estate of DEXTER ERIC BARRY and issued her Letters of Administration. *See* case 16-2023-CP-1142 (Duval County, Florida, Circuit Court).

7. Since November 20, 2023, Defendant Sheriff T.K. WATERS has been the Sheriff of Duval County, Florida. As Sheriff of Duval County, Florida, he exercises overall responsibility for the policies, training, instruction, supervision, customs, practices, policies, discipline, control and conduct of all law enforcement officers and detention officers employed by the Jacksonville Sheriff's Office ("JSO"). At all times material hereto, Sheriff T.K. WATERS, in his official capacity, and his agents and employees, acted under color of state law. Defendant T.K. WATERS is sued only in his official capacity as Sheriff of Duval County, Florida.

8. Importantly, two of T.K. WATERS' predecessors in interest, including Sheriff Mike Williams and Sheriff Pat Ivey, each served as Sheriff of Duval County, Florida, at times that are material herein and hereto. Therefore, unless otherwise indicated, where reference is made to T.K. WATERS in this complaint, such reference is intended to refer to the constitutional officer who was the Duval County Sheriff at the relevant time, in his official capacity as Sheriff.

9. At all times material, Officer J.J. McKeon was and is a deputy sheriff's officer, employed by the Jacksonville Sheriff's Office. At all times material, he was an agent, servant, and employee of Sheriff T.K. WATERS and the Jacksonville Sheriff's Office.

10. Insofar as federal law may incorporate FLA. STAT. § 768.18, Decedent's survivors are FELICIA DAVIS-BARRY, individually, who is Decedent's surviving wife, and Nickolas J. Boone, who is one of Decedent's surviving children and whose date of birth is February 16, 2000.

11. At all times material, all defendants acted under color of state law, within the course and scope of their employment.

12. Plaintiff has retained the undersigned Counsel and agreed to pay a reasonable attorney fee and costs.

13. On October 30, 2020, Decedent underwent long-awaited heart transplant surgery at the Mayo Clinic in Jacksonville, Florida.

14. Following his heart transplant surgery, Decedent was prescribed anti-rejection medications that he was required to take multiple times, daily.

15. Post-operation, Decedent always took his medication timely and as prescribed, and he otherwise complied with his physicians' orders and directions in all respects.

16. On or about April 20, 2022, Decedent was examined by his physician, who performed a biopsy of the transplanted heart. The examination reflected that Decedent's heart was in excellent condition and that Decedent's body was responding well to the transplant, with the medications.

17. On November 18, 2022, just before noon, Decedent was involved in an argument with his neighbor. During this argument, Decedent made conditional threats to his neighbor that Officer McKeon later concluded amounted to simple assault, a second-degree misdemeanor under Florida law, punishable by a maximum of 60 days in jail.

18. Decedent's neighbor called 9-1-1, and Officer McKeon responded.

19. After investigating the alleged simple assault, Officer McKeon arrested the Decedent and placed Decedent in the back of McKeon's police car.

20. During the following hour and a half, Decedent informed McKeon that Decedent was a heart transplant recipient, and that Decedent was required to take very expensive anti-rejection prescription medication multiple times per day – and that Decedent was due to take a dose of the medication.

21. Decedent mentioned his medication and health concerns to McKeon at least seven times while Decedent was in McKeon's back seat.

22. Because McKeon's bodyworn camera recording is central to Plaintiff's claims, and its authenticity cannot seriously be disputed, Plaintiff attaches it hereto and incorporates its contents herein by reference as **Exhibit A**.[2]

23. Despite Decedent having expressly and thoroughly advised McKeon about Decedent's need for his life-sustaining, anti-rejection, prescription medication, McKeon deliberately disregarded Decedent's pleas.

---

[2] Decedent's reference to heart transplant medication can be viewed at the following times during McKeon's bodyworn camera recording: 20:00, 37:00, 41:00, 52:00, 54:00, 1:16:00, and 1:20:00.

4

24. Decedent was admitted to the Duval County Jail at 1:29 p.m. on November 18, 2023. For the remainder of the day on November 18, 2023, Decedent was not furnished with any of his life-sustaining anti-rejection medications.

25. On the following morning, November 19, 2023, Decedent appeared in the J-1 Courtroom for Decedent's "first appearance" hearing.

26. A true and accurate transcript of Decedent's first appearance hearing is attached hereto and incorporated herein by reference as **Exhibit B**.

27. Decedent pleaded with the presiding Judge, saying, "Your Honor, sir . . . I am on medication. I just had a heart transplant and I haven't took [sic] my medicine all day since I have been locked up, and I take rejection medicines for my heart so my heart won't reject it, and I am almost two years out . . . And the medicine that I am taking it's like 30 day prescription [sic] that's like $2400 . . ."

28. Numerous law enforcement officers, bailiffs, employees, and agents of the Jacksonville Sheriff's Office were present, listening to Decedent complain about how Decedent had not received his anti-rejection, prescription medications. Despite Decedent's desperate, overt, urgent, and unequivocal protestations to the presiding judge, Decedent was not provided with his anti-rejection, prescription medication for the remainder of the day on November 19, 2022.

29. Decedent remained in custody at the Duval County pre-trial detention facility until the following day (November 20, 2022), when he was finally released on bond.

30. After being released from custody, Decedent immediately resumed taking his anti-rejection medication and sought medical attention at the Mayo Clinic. However, the two-day lapse in medication commenced an irreversible process of heart rejection

that culminated with Decedent succumbing to complete heart failure on November 23, 2022, at approximately 1:15 p.m.

31.  Decedent was transported by ambulance to a hospital emergency room, arriving at 2:15 p.m. in cardiac arrest. Despite efforts to resuscitate the Decedent, he was pronounced dead at 2:39 p.m. on November 23, 2022.

32.  The Duval County, Florida Medical Examiner's Office ("MEO") did not perform an autopsy on the Decedent, but the MEO did generate a report about Decedent's death. It is attached hereto and incorporated herein by reference as **Exhibit C**.

33.  Upon learning that the MEO had not and would not conduct an autopsy, Decedent's family hired Dr. Jose V. Suarez Hoyos, M.D., to perform a private autopsy at a cost of $5,500.00.

34.  Dr. Suarez is a licensed physician and certified pathologist in the State of Florida. He did, in fact, perform an autopsy on Decedent's body and prepared a detailed autopsy report, a true and accurate copy of which is attached hereto and incorporated herein by reference as **Exhibit D**.

35.  Dr. Suarez concluded and is of the opinion that Decedent's cause of death was cardiac arrest, due to an autoimmune reaction and rejection of Decedent's transplanted heart.

36.  The evidence at trial will unequivocally establish that the 2-day lapse in medication, as alleged above, was the direct and proximate cause of Decedent's autoimmune reaction and rejection of Decedent's transplanted heart.

37. At all times material, Defendant T.K. WATERS, in his official capacity, contracted with non-party Armor Correctional Health Services, Inc., and/or an affiliate thereof (collectively, "Armor"), to provide medical and pharmacy services at the Duval County Jail.

38. The contract with Armor notwithstanding, Defendant T.K. WATERS, in his official capacity, had a non-delegable, federal constitutional duty to the inmates in his custody, including the Decedent, to provide for their serious medical needs. Defendant breached that duty, causing death and grievous harms.

39. At all times material, Armor was a corporately convicted felon that had a long history, in many other Florida county jails and throughout many other states' jails and prisons, of neglecting inmates' serious medical needs, criminally falsifying records, and accounting for the risk of inmate loss of life as simply a cost of doing business.

40. At all times material, Armor provided inadequate medical care to inmates in the Duval County Jail, while outright bragging about cost-savings (including, specifically, prescription medication costs) to Defendant T.K. WATERS and other high-level City officials.

41. At all times material, the Jacksonville Sheriff's Office and the Duval County Jail had a Monthly Medical Audit Committee Meeting, which purported to review the healthcare and prescription goods and services that Armor was rendering in the Duval County Jail. Without exception, at all times material, the Monthly Medical Audit Committee discussed Armor's concerning staffing levels at the Duval County Jail during every single monthly meeting. However, despite the actual knowledge that T.K. WATERS, in his official capacity, had concerning Armor's understaffing at the Duval County Jail, T.K.

WATERS, in his official capacity, took no action whatsoever to ensure that inmate lives would not be lost at his jail.

42. At all times material, Armor provided dangerously few staff members at the Duval County Jail, such that it was impossible for all jail inmates to receive their medications as prescribed.

43. Prior to Decedent's death, a subordinate of Sheriff T.K. Waters, Director of Corrections Tammy Morris, became so concerned about Armor's understaffing at the jail that she solicited volunteers from the Jacksonville Fire & Rescue Department to assist with the various responsibilities that the medical and nursing staff at the jail had. However, Morris's request for assistance did not result in any additional resources to address the medical staffing shortage in the jail.

44. Sheriff T.K. Waters, individually, and high-level elected officials at the City of Jacksonville were well aware of Armor's long history of causing injury and loss of inmate lives.

45. Armor and its senior executives regularly communicated with high level officials at the City of Jacksonville and the JSO through Armor's unregistered lobbyist, Tony Boselli, a retired NFL hall-of-fame football player and former Jacksonville Jaguar. Additionally, at all times material, Armor subcontracted with a sitting Jacksonville City Councilmember to provide pharmacy consulting services at the Duval County Jail.

46. Despite the actual knowledge of the serious risk of serious bodily harm and death that Armor posed and would continue to pose to inmates of the Duval County Jail, which knowledge the most senior officials of the Jacksonville Sheriff's Office and the City of Jacksonville had, in late 2022, T.K. WATERS, in his official capacity, awarded Armor

8

a no-bid, $98,000,000 contract to continue providing inmate health services at the Duval County Jail.

47. At the time of the 2022 contract, T.K. WATERS, in his official capacity, actually knew, or should have known, that, as a result of Armor's prior felony criminal conviction in Wisconsin, Armor was actually ineligible to enter into a contract to provide inmate health services at the Duval County Jail, pursuant to FLA. STAT. § 287.133.

48. By design, Armor never planned or intended to provide the inmates at the Duval County Jail with all of their necessary prescription medications, and T.K. WATERS, in his official capacity, actually knew or should have known as much.

49. At all times material, according to Armor's Chief Operating Officer, Manuel Fernandez, Armor had a prescription medication policy or pervasive practice (so pervasive that it had the force of a written policy), pursuant to which, some medication, including the life-sustaining, anti-rejection medications that the Decedent needed multiple times daily in order for him to survive, would not be dispensed to inmates at the Duval County Jail until after the inmate had been in custody for at least 2 days.

50. For Decedent, who did not receive any of his anti-rejection medication while he was in the Duval County Jail, this policy or practice, by itself, was enough to cause Decedent's death.

51. For this reason, as well as numerous other reasons articulated above, Sheriff T.K. WATERS, in his official capacity, was the moving force behind the violations of Decedent's constitutional rights, as well as Decedent's resulting death and all of the compensatory damages that flow from and relate to it.

## COUNT I – DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS
## 42 U.S.C. §§ 1983, 1988

52. Ms. Davis-Barry, in her capacity as Personal Representative of Decedent's Estate, realleges and incorporates by reference paragraphs 1 through 51 above, as though fully set forth herein.

53. Ms. Davis-Barry, in her capacity as Personal Representative of Decedent's Estate, brings a *Monell* claim under 42 U.S.C. § 1983 for deprivation of civil rights under color of state law against Defendant Sheriff T.K. WATERS, in his official capacity as Sheriff of Duval County, Florida.

54. While Decedent was in the care and custody of the Jacksonville Sheriff's Office, Decedent had a serious medical need, to wit: anti-rejection care for his transplanted heart.

55. Defendant Sheriff T.K. WATERS, in his official capacity, was deliberately indifferent to Decedent's serious medical needs, in that the Defendant and his most senior policymakers had subjective knowledge of a risk of serious harm to Decedent, and Defendant disregarded that risk by conduct that is more than gross negligence.

56. Defendant Sheriff T.K. WATERS, in his official capacity, was the moving force behind the violations of Decedent's constitutional rights, through his failure to properly supervise Armor notwithstanding his knowledge of Armor's history and practice of providing constitutionally deficient medical care to jail and prison inmates, including inmates at the Duval County Jail.

57. The above-described conduct constitutes a violation of Decedent's Fourth, Eighth, and Fourteenth Amendment rights.

58. Florida's Wrongful Death Act prevents or limits compensation for actual injuries caused by a particular constitutional deprivation, as mandated by 42 U.S.C. § 1983, when those injuries include pain and suffering sustained as a result of a constitutional violation which happens to culminate in death. Florida's Wrongful Death Act is therefore inconsistent with the purpose of the Civil Rights Act of 1871. Accordingly, herein, Plaintiff is entitled to recover damages not otherwise permitted by Florida's Wrongful Death Act.

59. Defendant's violations and deprivation of rights were the direct and proximate cause of:

   a. The injury and death of Decedent, including Decedent's conscious pain and suffering;

   b. The loss of past and future support and services of Decedent to his Wife, Felicia Davis-Barry;

   c. The past and future mental pain and suffering, resulting from Decedent's injury and death, that FELICIA DAVIS-BARRY, individually, who is Decedent's surviving wife, and Nickolas J. Boone, who is Decedent's surviving child, have suffered, are suffering, and will suffer in the future;

   d. Medical and funeral expenses incurred by Plaintiff FELICIA DAVIS-BARRY, and/or that have become a charge against Decedent's Estate or were paid by or on behalf of Decedent; and

   e. Hedonic damages, including but not limited to the Decedent's conscious pain and suffering that he endured from the moment of his arrest on

November 18, 2022, until the time of his death on November 23, 2022, as well as the value of Decedent's life.

**WHEREFORE**, FELICIA DAVIS-BARRY, as Personal Representative of Decedent's Probate Estate, demands judgment against Defendant T.K. WATERS, in his official capacity, for the following:

A. Actual, General, Compensatory, Special, and Hedonic Damages;

B. Costs;

C. Attorney Fees, pursuant to 42 U.S.C. § 1988; and

D. Such other and further relief as this Honorable Court deems Just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial.

Dated May 8, 2024.                                          **THE BONDERUD LAW FIRM, P.A.**

*/s/ **Andrew Bonderud***
Andrew Michael Bonderud, Esq.
Florida Bar No. 102178
2130 Riverside Ave.
Jacksonville, FL 32204
904-438-8082 (telephone)
904-800-1482 (facsimile)
Andrew@Jax.Lawyer
Yojaimy@Jax.Lawyer
Jessica@Jax.Lawyer
Kinnette@Jax.Lawyer
BonderudLaw@gmail.com
*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on May 8, 2024, I filed the foregoing document with the Clerk of Court via the CM/ECF system, which will serve a notice of electronic filing via email upon:

Tiffiny Douglas Pinkstaff, Esq.
Mary Margaret Giannini, Esq.
Office of General Counsel
City of Jacksonville
117 West Duval Street, Suite 480
Jacksonville, FL 32202
TPinkstaff@coj.net
MGiannini@coj.net
*Counsel for Defendant*

                                        ***/s/ Andrew Bonderud***
                                        Attorney